IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| SCHNEIDER NATIONAL CARRIERS, INC., ) <br> SCHNEIDER NATIONAL LEASING, INC., ) <br> and SCHNEIDER NATIONAL, INC.,  ) <br>  ) <br> Plaintiffs,  ) <br>  ) <br> v.  ) <br>  ) <br> RAPTOR AUTO TRANSPORT INC,  ) <br>  ) <br> Defendant.  ) <br>  ) <br>  ) | Case No: 1:23-cv-00469-BMB <br><br> JUDGE BRIDGET MEEHAN BRENNAN |

**DEFENDANT'S MEMORANDUM IN SUPPORT OF ITS
MOTION TO DISMISS COUNT FIVE OF THE COMPLAINT**

All counterfeits are infringements, but not all infringements are counterfeits—counterfeits are a particular type of infringement. What Plaintiffs allege is *not* counterfeiting. Rather, Plaintiffs allege that, after allegedly "deactivating" Raptor Auto as an approved motor carrier, Raptor Auto continued to use Plaintiffs' trademarks in the same way as it had done during the pendency of the parties' binding Master Transportation Agreement. Black-letter Sixth Circuit law holds that such conduct is *not counterfeiting*. Thus, because Plaintiffs did not and cannot plead or prove that Raptor Auto used a counterfeit mark, the Court must dismiss Count Five.

**I. FACTUAL BACKGROUND**

On January 8, 2021, Plaintiff Schneider National Carriers, Inc. ("SNC") and Defendant Raptor Auto Transport Inc ("Raptor Auto") entered into a Master Transportation Agreement ("the

22802535 v1

Agreement")[1]. According to the Agreement, Raptor Auto was to provide transportation and related services under contract for SNC and/or its customers. (Ex. A, Introduction.) To carry out such services, SNC provided that it "may authorize [Raptor Auto] from time to time, to transport [SNC's] owned or leased trailing equipment (*e.g.*, trailers, containers, chassis, tankers, bulk-intermodal tankers, refrigerated trailers, flatbeds, etc.), or other specialized equipment, in accordance with the shipment tendered to [Raptor Auto by SNC] (such trailing and specialized equipment so owned or leased by [SNC or Customer] the "Non-[Raptor Auto] Equipment")." (Ex. A, Sec. 21.)

Plaintiffs allege in their Complaint that "Schneider's commercial trucks and trailers" consist of "highly recognizable, bright orange trailers" that feature Schneider's "prominent logo." (Doc. 1, ¶¶ 15-16, 23, 39.) It is these very "SCHNEIDER" trailers that Plaintiffs allege "Raptor has systematically misappropriated." (Doc. 1, ¶¶26, 38.)

Plaintiffs acknowledge that they "previously engaged Raptor [Auto] on a non-exclusive basis to transport freight for [Plaintiffs'] brokerage customers" using these trailers (Doc. 1, ¶¶ 8, 13), but nonetheless purport to assert multiple causes of action based on Raptor Auto's alleged continued use of the trailers without authorization, *i.e.*, in the same manner as it did prior to the termination of their agreement (Doc. 1, ¶ 43).

On March 8, 2023, Plaintiffs filed the Complaint alleging several counts, including Count Five for counterfeiting under the Lanham Act. (Doc. 1, ¶¶ 73-77.) Plaintiffs' counterfeiting claim

---

[1] The Agreement was incorporated by reference into the Complaint and is attached hereto as Exhibit A. "[A] court may consider a document not formally incorporated by reference in a complaint when the complaint refers to the document and the document is central to the claims." *Nixon v. Wilmington Tr. Co.*, 543 F.3d 354, 357 n.2 (6th Cir. 2008) (citing *Greenberg v. Life Ins. Co. of Va.*, 177 F.3d 507, 514 (6th Cir.1999)). Plaintiffs cite to the Agreement multiple times throughout the Complaint (*see e.g.*, Doc. 1, ¶ 13) and the document is central at a minimum to Raptor Auto's identity as a prior licensee, the parties' course of conduct, and the binding terms regarding unauthorized use that define Plaintiffs' remedies (*see, e.g.*, Ex. A, Introduction (setting forth the parties), Sec. 1 (setting forth the term), Sec. 21 (setting forth Raptor Auto's authorization), Secs. 25 and 27 (setting forth penalties for unauthorized use of Plaintiffs' equipment)).

alleges that Raptor Auto uses marks identical to the SCHNEIDER trademarks by unlawfully taking possession of equipment adorned with the SCHNEIDER trademarks and using it to transport freight. (Doc. 1, ¶ 74.) Plaintiffs do not allege that Raptor Auto is *creating* trademarks. (Doc. 1, ¶¶ 39, 40.) Rather, based on Raptor Auto's continued use of the same SCHNEIDER-adorned equipment it was previously authorized to use, Plaintiffs now allege that Raptor Auto is liable for counterfeiting Plaintiffs' marks. (Doc. 1, ¶¶74-77.) On these facts, Plaintiffs have no such claim under settled Sixth Circuit law.

## II. LEGAL STANDARD

"[T]o survive a motion to dismiss, a complaint must contain (1) 'enough facts to state a claim to relief that is plausible,' (2) more than 'a formulaic recitation of a cause of action's elements,' and (3) allegations that suggest a 'right to relief above a speculative level.'" *Tackett v. M&G Polymers, USA, LLC*, 561 F.3d 478, 488 (6th Cir. 2009).

Legal conclusions and unwarranted factual inferences are not accepted as true, nor are mere conclusions afforded liberal Rule 12(b)(6) review. *Fingers v. Jackson-Madison County General Hospital District*, 101 F.3d 702 (6th Cir. Nov. 21, 1996). Dismissal is proper if the complaint lacks an allegation regarding a required element necessary to obtain relief. *Craighead v. E.F. Hutton & Co.*, 899 F.2d 485, 489-90 (6th Cir. 1990).

To recover on a federal trademark counterfeiting claim, a plaintiff must show that: (1) the defendant infringed a registered trademark in violation of 15 U.S.C. § 1114; and (2) the defendant intentionally used the mark knowing it was a counterfeit as the term counterfeit is defined in 15 U.S.C. § 1116. 15 U.S.C. § 1117(b). *Laukus v. Rio Brands, Inc.*, 391 F. App'x 416, 425 (6th Cir. 2010). "Section 1116 defines 'counterfeit mark' as 'a mark that is registered on the principal register in the United States Patent and Trademark Office for such goods or services sold, offered

for sale, or distributed and that is in use, whether or not the person against whom relief is sought knew such mark was so registered.' Elsewhere, the statute provides additional clarification, defining 'counterfeit' as 'a spurious mark which is identical with, or substantially indistinguishable from, a registered mark.'" *Id.* (internal citations omitted.)

### III. ARGUMENT

In the Sixth Circuit, it is black letter law that when "a holdover franchisee continues to use the franchisor's original trademark after the franchise has been terminated . . . it is not the use of a counterfeit mark." *U.S. Structures, Inc. v. J.P. Structures, Inc.*, 130 F.3d 1185, 1192 (6th Cir. 1997). Because Plaintiffs at best only allege continued use of Plaintiffs' own trademarks—not fake or shame trademarks—after an alleged falling out, the Court must dismiss Count Five of the Complaint.

"Counterfeiting is the act of producing or selling a product with a *sham* trademark that is an intentional and calculated reproduction of the genuine trademark." 4 McCarthy on Trademarks and Unfair Competition § 25:10 (5th ed.) (emphasis added). "A 'counterfeit mark' is a *false* mark that is identical with, or substantially indistinguishable from, the genuine mark." *Id.* (emphasis added).

As the Lanham Act's legislative history makes clear, "spurious" means "not genuine or authentic." Joint Statement on Trademark Counterfeiting Legislation, 130 Cong. Rec. H31,675 (1984).

In *U.S. Structures, Inc. v. J.P. Structures, Inc.*, the Sixth Circuit reviewed a district court's summary judgment decision awarding damages for use of a counterfeit mark. *U.S. Structures*, 130 F.3d at 1187. The plaintiff, U.S. Structures, was a franchisor that, prior to litigation, had authorized the defendant, J.P. Structures, to use the trademark ARCHADECK and other related trademarks.

*Id.* J.P. Structures used these trademarks without problem until U.S. Structures terminated the franchise agreement for lack of payment. *Id.* Post-termination, J.P. Structures, however, continued to use the ARCHADECK trademark in the same matter as it had during the agreement. *Id.* U.S. Structures sued to enjoin continued use, alleging counterfeiting under the Lanham Act. *Id.* at 1191–92. On U.S. Structure's motion for summary judgment, the district court awarded damages for counterfeiting. *Id.* at 1188 (citing § 1117(b)). The Sixth Circuit reversed. *Id.* at 1192. In doing so, it held that Section "1117(b) does not apply where, as in this case, a holdover franchisee continues to use the franchisor's original trademark after the franchise has been terminated . . . [as] it is not the use of a counterfeit mark." *Id.*

In other words, when the legitimate trademark is *retained* rather than a sham or fake trademark *created*, the use of such trademark is *not* counterfeiting.

Sixth Circuit district courts have reached the same conclusion. In *Bridgestone Brands, LLC*, No. 15-CV-00857-JPM-BDH, 2017 WL 11476333 (M.D. Tenn. Apr. 27, 2017), the defendant, Apollo Auto Sales & Service, entered into an Authorized Dealer Agreement with plaintiff Bridgestone Americas Tire Operations, LLC, whereby defendant received a license to use certain FIRESTONE and BRIDGESTONE trademarks on certain advertising and promotional materials throughout the store. *Id.* at *2. Bridgestone eventually terminated the agreement because Apollo failed to meet the minimum purchasing obligations; Apollo, however, failed to remove any of the FIRESTONE or BRIDGESTONE signage from the store. *Id.* Bridgestone sued to enjoin the continued use of these trademarks by Apollo and its successor Texas Auto Pros, LLC, bringing counterfeiting claims (among others). *Id.* at *2–3. Citing U.S. Structures, the court found that because Apollo and Texas Auto Pros were holdover licensees, their use of the trademarks without authorization is not the use of a counterfeit mark. *Id.* at *10; *see also Pennzoil-Quaker State Co.*

*v. Smith*, No. 2:05CV1505, 2008 WL 4107159, at *20–22 (W.D. Pa. Sept. 2, 2008) (finding no counterfeiting as to purchaser of retail oil-change center who continued to display large PENNZOIL distributor signs despite not being an authorized PENNZOIL licensee or distributor because "the marks used by Defendant were genuine PENNZOIL marks" and "a counterfeit mark does not include any mark or designation for which the manufacturer or producer had authorization to use at the time of manufacture or production.")

Plaintiffs *do not allege* Raptor Auto created *false* or *sham* marks. Rather, Plaintiffs allege *only* that Raptor Auto used without authorization the *original, genuine* trademarks that adorn the side of Plaintiffs' trailers. If true, that may be an infringement of Plaintiffs' trademark rights, but it is not a counterfeit of their trademark. Because Plaintiffs did not and cannot plead or prove that Raptor Auto intentionally and knowingly used a counterfeit mark, Count Five must be dismissed as a matter of law.

## IV. CONCLUSION

For all of the foregoing reasons, Raptor Auto respectfully requests that the Court grant its Motion in all respects and dismiss Count Five of the Complaint.

Dated: May 11, 2023  Respectfully submitted,

**BENESCH, FRIEDLANDER,
 COPLAN & ARONOFF LLP**

/s/ *Eric L. Zalud*
Eric Larson Zalud (0038959)
Clare R. Taft (0076570)
Angela R. Gott (0082198)
Lidia C. Mowad (0097973)
200 Public Square, Suite 2300
Cleveland, OH  44114
(216) 363-4500 - Telephone
(216) 363-4588 - Facsimile
ezalud@beneschlaw.com

       ctaft@beneschlaw.com
       agott@beneschlaw.com
       lmowad@beneschlaw.com

*Attorneys for Defendant
Raptor Auto Transport Inc.*