IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| SCHNEIDER NATIONAL CARRIERS, INC., ) <br> SCHNEIDER NATIONAL LEASING, INC., ) <br> and SCHNEIDER NATIONAL, INC., ) <br> ) <br> Plaintiffs, ) <br> ) <br> v. ) <br> ) <br> RAPTOR AUTO TRANSPORT INC., ) <br> ) <br> Defendant. ) <br> ) <br> ) | Case No: 1:23-cv-00469-BMB <br><br> JUDGE BRIDGET MEEHAN BRENNAN |

**DEFENDANT'S REPLY MEMORANDUM IN SUPPORT OF
ITS MOTION TO DISMISS COUNT FIVE OF THE COMPLAINT**

Plaintiffs Schneider National Carriers, Inc., Schneider National Leasing, Inc., and Schneider National, Inc. (collectively, "SNC") tell a sensational, seemingly ripped-from-the-headlines story in their Response in Opposition (Doc. 21) ("Response"), but only to distract from the merits of Defendant Raptor Auto Transport Inc.'s ("Raptor Auto") Motion to Dismiss ("Motion"). Obviously discontent with binding Sixth Circuit law, SNC lays its false narrative on thick, trying to spin Raptor Auto's alleged unauthorized use of SNC's trailers into a "plausible claim[]" for trademark counterfeiting. But the law of this Circuit is not on SNC's side. In the Sixth Circuit, the continued use, post-license, of *original* trademarks is not counterfeiting. Nothing in the Response changes this fact. Of course, if this Court dismisses SNC's claim for counterfeiting, as precedent mandates, SNC will still have sufficient remedies and can be made

whole for Raptor Auto's alleged wrongdoing if SNC succeeds on its remaining claims. This Court should grant the Motion.

I. **Righting Plaintiffs' False Narrative.**

This action does not center on "Raptor's practice of stealing"—Plaintiffs are not the city prosecutors, and the local sheriff is not careening down the highway after Raptor Auto.

Rather, this is a commercial dispute. As recently as 2021, SNC considered Raptor Auto an upstanding company and desired to engage Raptor Auto for its transportation services. (Agmt., Doc. 18-2.) Recognizing Raptor Auto's good reputation in the industry and desirability as a business partner, SNC and Raptor Auto entered into a Master Transportation Agreement ("the Agreement") whereby Raptor Auto provided "transportation and related services" (*id.* at PageID 147) to "transport all freight" (*id.* at PageID 152) on "Non-Carrier Equipment" (*id.*). This "Non-Carrier Equipment" was "trailing and specialized equipment so owned or leased by [SNC]" (*id.* at PageID 154), bearing SNC's "prominent logo" (Compl., Doc. 1 at ¶¶ 15-16, 23, 39.) Because the equipment was owned or leased by SNC, SNC authorized Raptor Auto to use this Non-Carrier Equipment. (Doc. 18-2 at PageID 152-155; Doc. 1 at ¶¶ 8, 13).

SNC alleges that, at some point, it ended the Agreement (Doc. 1, ¶ 13), but that Raptor Auto nonetheless continued to transport freight using the Non-Carrier Equipment (*id.* at ¶ 26) in the same manner as it did during the Agreement, though perhaps no longer authorized by SNC to do so (*see, e.g.*, *id.* at ¶ 23).

II. **Plaintiffs Take Issue with Sixth Circuit Law Itself—Not Application of the Law to the Facts.**

Plaintiffs repeatedly condemn Raptor Auto for its "erroneous understanding of the term 'counterfeit'" (Response, Doc. 21 at PageID 207), but Raptor Auto's understanding comes *directly* from the Sixth Circuit. As such, SNC's dispute is with Sixth Circuit law itself—not Raptor Auto.

2

Because this Court is bound by Sixth Circuit law, SNC's opposition to it is without merit and the Motion should be granted.

In the Sixth Circuit, the law is that when "a holdover franchisee *continues to use the franchisor's original trademark* after the franchise has been terminated . . . it is not the use of a counterfeit mark." (Def.'s Mem., Doc. 18-1 at PageID 142-143 (citing *U.S. Structures, Inc. v. J.P. Structures, Inc.*, 130 F.3d 1185, 1192 (6th Cir. 1997) (emphasis added.)).) As the Sixth Circuit has explained, "[a]though the use of an *original* trademark is without authorization, it is not the use of a counterfeit mark." *Id.* (emphasis added.)

Both McCarthy (the leading treatise on trademark law) and the relevant legislative history support the Sixth Circuit's interpretation of the term "counterfeit" (Doc. 18-1 at PageID 142). That interpretation has been followed by at least two district courts within this Circuit (*id.* at 143-144). SNC failed to address any of these authorities.

Yet, it is with this *exact* holding that SNC takes issue—arguing that "Raptor takes the position that a party who uses "the *original genuine* trademarks" of another party without permission cannot be held liable for trademark counterfeiting" (Doc. 21 at PageID 208) and that, "[i]n Raptor's view, it is not counterfeiting 'when the legitimate trademark is *retained*' by the alleged infringer" (*id.* at 210). But this is not merely Raptor Auto's view, it is Sixth Circuit law.

Under *U.S. Structures*, this Court's inquiry is clear—did Raptor Auto continue to use SNC's *original* trademark? Yes, according to SNC itself. (Doc. 18-1 at PageID 144.) SNC concedes this answer again in its Response: "the Schneider Marks adorned on the trailers were 'original, genuine marks' (and not 'fake' marks actually 'created' by Raptor)." (Doc. 21 at PageID 208-209.) By conceding this fact, as it must, SNC has confirmed its fate under *U.S. Structures*—

3

its counterfeiting claim cannot succeed because Raptor Auto's alleged use "is not the use of a counterfeit mark."

SNC's Response invites this Court to commit reversible legal error by ignoring *U.S. Structures*. (Doc. 21 at PageID 206-207.)  But adhering to precedent is not a matter of choice, as the Sixth Circuit (like all others) has admonished.  *See, e.g.*, *Frost v. Ohio Dep't of Rehab. And Correction*, No. 3:19-CV-596, 2020 WL 5629078, at *2 (N.D. Ohio Sept. 21, 2020), *aff'd sub nom. Frost v. Dep't of Rehab. & Correction*, No. 20-4146, 2021 WL 5021042 (6th Cir. June 1, 2021) ("It is a well-settled rule that a district court is bound by the decisions of the circuit court of appeals in which it sits.").

As part of this lure, SNC relies upon inapposite case law. (Doc. 21 at PageID 208.)  First, SNC ignores that *U.S. Structures*, like this case, involved allegedly counterfeit services.  *U.S. Structures* concerned the alleged counterfeit offering of deck-construction services under the trademark "ARCHADECK" by virtue of continued use of an advertising program that used the trademark.  *U.S. Structures*, 130 F.3d at 1187.  Here, Raptor Auto allegedly continued to use the trademark SCHNEIDER in connection with offering transportation services.  (*See, e.g.*, Doc. 1 at ¶ 26.)  Not only is *U.S. Structures* a binding Sixth Circuit decision, but it is better aligned on the facts than cases involving counterfeit goods.

Nonetheless, SNC resorts to out-of-circuit case law concerning counterfeit goods and vastly different conduct. (*See* Doc. 21 at PageID 207-208 (relying on *Gen. Elec. Co. v. Speicher*, 877 F.2d 531 (7th Cir. 1989)).)  In *General Electric*, the Seventh Circuit was faced with an appeal by GE after winning a trademark infringement case (but no damages) against a business that fabricated fake GE 570 inserts for industrial cutting tools.  The defendant created the fake inserts by using raw material different from genuine GE inserts, coating the fake inserts with the wrong

4

coating, etching the GE unregistered trademark "570" on each fake insert, placing the fake inserts in genuine empty GE boxes, stamping "570" on those boxes, and then selling them to unknowing customers as genuine GE 570 inserts. Because "570" was not a registered trademark, however, the federal counterfeiting claim could only be based on the defendant's use of the "GE" trademark in connection with the fake inserts. The Seventh Circuit acknowledged that the described conduct of placing fake products in genuine GE-stamped boxes was not "counterfeiting" in the literal sense. The court nonetheless reached what it considered to be a "sensible" interpretation of counterfeiting, allowing it to vacate the district court's order awarding damages to the plaintiff (of $0) and to remand the case to a different district judge for a new trial on damages:

> Since the mark had been placed on the boxes by General Electric, it was not a counterfeit in the literal sense, although Speicher was not authorized to use it in connection with inserts not manufactured by General Electric. The district judge concluded that it was not a "counterfeit" within the meaning of section 1114(1)(a), either. We disagree. The literal sense might be the correct one if section 1114(1)(a) were aimed just at "counterfeiting." But as the words "reproduction," "copy," and "colorable imitation" suggest more clearly than "counterfeiting," the aim is broader: to prohibit the use of your trademark on someone else's product without your authorization.

*Gen. Elec.*, 877 F.2d at 534. Notably, unlike in this case, there was no business relationship between General Electric and the defendant at any time—the defendant obtained the genuine GE boxes not from General Electric itself, but from an authorized GE distributor. Other than the fact that the case involves a claim of "counterfeiting," there is no similarity between *General Electric* and the case before this Court, and the Court should reject SNC's attempted reliance on it.

The applicable precedent is clear—the Motion should be granted.

### III. *U.S. Structures* Applies Despite Plaintiffs' Arguments.

In a further attempt to evade the application of *U.S. Structures*, SNC throws metaphorical spaghetti at the wall, arguing that: (a) *U.S. Structures* only applies where a trademark license was

previously granted, and SNC never granted any license here (Doc. 21 at PageID 209-210); (b) *U.S. Structures* only applies to franchisor-franchisee relationships, not licensing relationships (*id.* at 206, 209); and (c) Raptor Auto's conduct does not fall with the exception to the definition of "counterfeiting" under the Lanham Act (*id.* at 209-210). But SNC *did* previously grant Raptor Auto a trademark license, *U.S. Structures* is not so limited, and Raptor Auto's alleged conduct does not amount to counterfeiting under the Lanham Act.

    a. **Raptor Auto had a trademark licensee under the Agreement.**

At its core, a trademark license "is a grant of permission that negates an element of a trademark-infringement claim." *Shields of Strength v. U.S. Dep't. of Def.*, No. 6:21-CV-00484, 2023 WL 3293279, at *11 (E.D. Tex. May 5, 2023); *see also Tumblebus Inc. v. Cranmer*, 399 F.3d 754, 765 (6th Cir. 2005) ("In a license, the licensee is engaging in acts which would infringe the licensor's mark but for the permission granted in the license.").

Notwithstanding SNC's arguments to the contrary (Doc. 21 at PageID 204), there are no "magic words" needed to grant a trademark license. A trademark license is simply "permission to use" the trademark. SNC repeatedly concedes that it previously granted Raptor Auto a trademark license, by virtue of granting Raptor Auto "permission to use" the SCHNEIDER-branded trailers. (*See, e.g.*, Doc. 21 at PageID 209 (admitting that the Agreement "provided Raptor with limited, temporary permission to use certain Schneider trailers").)

*SNC cannot have it both ways*—Raptor Auto's prior, authorized use of the SCHNEIDER-branded trailers must have been pursuant to a trademark license, or else Raptor Auto's later, allegedly unauthorized use of the SCHNEIDER-branded trailers cannot possibly be trademark infringement (*see Tumblebus*, 399 F.3d at 765), much less counterfeiting.

6

b.  *U.S. Structures is not limited to franchising cases.*

Plaintiffs next create a false barrier to application, suggesting that *U.S. Structures* only applies to a franchisor-franchisee relationship (Doc. 21 at PageID 206).  But nothing in *U.S. Structures* suggests that it would not apply to other types of trademark licenses; indeed, *U.S. Structures* has been applied to a trademark license apart from a franchisor-franchisee relationship.

As cited in its Motion (although ignored by SNC), *U.S. Structures* was applied in *Bridgestone Brands, LLC*, No. 15-CV-00857-JPM-BDH, 2017 WL 11476333 (M.D. Tenn. Apr. 27, 2017), where there was no franchisor-franchisee relationship. (Doc. 18-1 at PageID 143.) The defendant in that case, Apollo Auto Sales & Service, entered into an Authorized Dealer Agreement with plaintiff Bridgestone Americas Tire Operations, LLC, whereby defendant Bridgestone "authoriz[ed] Apollo to use certain Firestone trademarks in connection with the store . . . includ[ing] a non-transferable, non-exclusive license to use the FIRESTONE and BRIDGESTONE marks for certain advertising and promotional materials." *Id.* at *2. The store was not a FIRESTONE or BRIDGESTONE franchise and the court correctly applied *U.S. Structures* in denying the plaintiff summary judgment on its counterfeiting claim.

*U.S. Structures* plainly applies to trademark license relationships, like the one between SNC and Raptor Auto, regardless of whether they include franchising.

c.  *Raptor Auto's alleged conduct is not counterfeiting.*

Last, again to avoid *U.S. Structures*, SNC looks to the Lanham Act itself to argue that Raptor Auto's conduct is counterfeiting because it does not fall within the "originally authorized goods" exception to the definition of a "counterfeit mark" at 15 U.S.C. § 1116(d)(1)(B).  This convoluted argument is easily unraveled for the same reasons discussed above.  To be sure, if

7

SNC's allegations are true, there are causes of action available to it; counterfeiting is just not one of them.

Section 1116 defines what is and is not a "counterfeit mark." As set forth in its Motion, a "counterfeit mark" is either: (1) a counterfeit of a mark registered by the USPTO that is in use for those goods or services; or (2) a spurious designation identical with or substantially indistinguishable from a designation protected by the Lanham Act. (Doc. 18-2, PageID 141-42.) Raptor Auto's conduct does not fall within that definition, so this Court need not analyze any further. (*Id.*)

SNC assumes otherwise and argues that Raptor Auto's conduct does not fall within an exception to that definition. A "counterfeit mark" is *not* a mark that is used for goods or services manufactured or produced with the trademark owner's authorization. 15 U.S.C. § 1116(d)(1)(B).

SNC *never* alleges that Raptor Auto manufactured or produced any new or different goods or services bearing the trademark; rather, SNC alleges that Raptor Auto continued to use trailers bearing SNC's trademark after SNC terminated the Agreement. Per Section 1116, a "counterfeit mark" cannot be one used on or in connection with goods or services authorized by SNC.

Yet, SNC argues that the exception does not apply because Raptor Auto changed the way it used the trademarks—by using the trailers without authorization (Doc. 21 at PageID 203) and by using the trailers for Raptor Auto's *own* goods or services (Doc. 21 at PageID 202, 209-210). SNC is wrong. These arguments are unsupported both in fact and in law, and ignore the contrary authority cited by Raptor Auto in its Motion.

First, post-termination authorization cannot possibly be dispositive of whether conduct amounts to counterfeiting. All post-termination conduct in *U.S. Structures*, *Bridgestone*, and *Pennzoil-Quaker State Co. v. Smith*, No. 2:05CV1505, 2008 WL 4107159 (W.D. Pa. Sept. 2,

8

2008), was also previously authorized and later unauthorized. Those courts still found that the post-termination conduct was not counterfeiting. Moreover, if SNC's argument were accepted, *every* instance of trademark infringement (*i.e.*, unauthorized use of a plaintiff's trademark) would also amount to trademark counterfeiting. That is not the law.

Second, as to SNC's argument that Raptor Auto was never granted a license to use the SCHNEIDER trademarks on Raptor Auto's *own* goods or services (Doc. 21 at PageID 202, 209-210), a former licensee that continues to provide services post-termination using the licensor's trademark is necessarily providing its own services, not those of the trademark owner, as the cases previously cited by Raptor Auto demonstrate. In *U.S. Structures*, J.P. Structures continued to use the trademark ARCHADECK for its own deck construction services; just as Apollo continued to use the FIRESTONE and BRIDGESTONE trademarks for its own retail services in *Bridgestone*, and Smith continued to use the PENNZOIL trademark for its own oil-change services in *Pennzoil-Quaker State Co*. SNC cannot defeat the Motion by ignoring the law.

In sum, SNC apparently appreciates that *U.S. Structures* dooms its counterfeiting claim and SNC's attempts to avoid its application as binding precedent in this case are without merit.

**IV.     The Motion is Not Premature and Should Be Granted.**

No discovery is necessary in this case to answer the fundamental question in *U.S. Structures*—did Raptor Auto continue to use SNC's *original* trademark? (Doc. 18-1 at PageID 144.) In both the Complaint and the Response, SNC concedes that Raptor Auto only ever used SNC's original trademarks placed by SNC on its owned or leased trailers. (Doc. 1 at ¶ 13 ("SNC previously engaged Raptor on a non-exclusive basis"); Doc. 21 at PageID 208-209.) As a result, Count Five may be properly dismissed at the motion to dismiss stage.

9

Desperate to maintain its counterfeiting claim, SNC argues that fact issues prevent this Court from dismissing the claim at the pleadings stage. Specifically, SNC contends that *Rosta AG v. Lovejoy* prohibits this Court from deciding Raptor Auto's status as a "holdover licensee or franchisee" before the completion of fact discovery. (Doc. 21 at PageID 211 (citing No. 1:16-CV-199, 2017 WL 3473841, *1 (W.D. Mich. Aug. 14, 2017)).) SNC also argues *Rosta* declared a distinction between "former franchisee" and "holdover franchisee." (Doc. 21 at PageID 211.) *Rosta* does neither of these things.

The *Rosta* decision that SNC cites concerned the issue of whether the plaintiff sufficiently pled a claim for counterfeiting damages under Section 1117 when it did not expressly plead a *claim* for counterfeiting. (2017 WL 3473841, at *2.) The issue was whether counterfeiting must be pleaded as a separate cause of action, for the plaintiff to pursue counterfeiting damages. (*Id.*) By citing Section 1117 in its request for relief, however, the court determined that notice pleading had been satisfied. (*Id.*)

In attempting to dismiss the counterfeiting damages demand, Lovejoy argued that a counterfeiting claim could not succeed under *U.S. Structures* because "counterfeiting is not applicable to a claim of trademark infringement involving a former licensee or authorized use of the allegedly infringed mark." Def.'s Mem. in Supp. of Mot. to Dismiss, 2016 WL 8942973 (W.D. Mich.). The court paid particular attention to the specific wording used by Lovejoy (*i.e.*, that "counterfeiting is not applicable to . . . a *former* licensee") (*Rosta*, 2017 WL 3473841, at *2), when the *U.S. Structures* court dealt with "a holdover franchisee" (*U.S. Structures*, 130 F.3d at 1192). Perhaps fearing (but not explaining any basis) that there was some distinction between a former franchisee and holdover franchisee, the court remarked that "whether Lovejoy is a holdover licensee or franchisee, is not a question that can be resolved as part of this motion to dismiss."

10

(*Rosta*, 2017 WL 3473841, at *2.)  Thus, the court declined to resolve Rosta's counterfeiting claim in Lovejoy's favor at that time.  (*Id.*)

Importantly, because the *Rosta* court was focused upon Lovejoy's status as a holdover licensee or franchisee, it *did not* reach the substantive issue of whether Lovejoy continued to use Rosta's original trademark.  As such, the *Rosta* court's decision to defer dismissal on an issue that is not in dispute in this case has no impact on whether the instant Motion is ripe.

Moreover, subsequent decisions reveal that there is no substantive difference between a "holdover licensee" and "former licensee"—many courts use the terms interchangeably.  *See, e.g.*, 4 McCarthy on Trademarks and Unfair Competition § 25:31 (referring to former and holdover franchisees, dealers, and licensees interchangeably); *Max Rack, Inc. v. Core Health & Fitness, LLC*, 40 F.4th 454, 467 (2022) (drawing no distinction between "holdover licensees" and "former licensee"); *see also Henderson v. Lindland*, Case No. CV 11-01350 DDP (DTBx), 2012 WL 1292496, at *2 (C.D. Cal. Apr. 16, 2012) (referring to "former licensee" and "holdover licensee" interchangeably).

For all of the foregoing reasons, Raptor Auto respectfully requests that the Court grant its Motion, and dismiss Count Five of the Complaint.

Dated: June 26, 2023                                    Respectfully submitted,

                                                              **BENESCH, FRIEDLANDER,**
                                                                **COPLAN & ARONOFF LLP**

                                                                /s/ *Eric L. Zalud*
                                                                Eric Larson Zalud (0038959)
                                                                Clare R. Taft (0076570)
                                                                Angela R. Gott (0082198)
                                                                Lidia C. Mowad (0097973)
                                                                200 Public Square, Suite 2300
                                                                Cleveland, OH  44114

(216) 363-4500 - Telephone
(216) 363-4588 - Facsimile
ezalud@beneschlaw.com
ctaft@beneschlaw.com
agott@beneschlaw.com
lmowad@beneschlaw.com

*Attorneys for Defendant*
*Raptor Auto Transport Inc.*