## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OHIO
## EASTERN DIVISION

| | |
|---|---|
| SCHNEIDER NATIONAL CARRIERS, INC., SCHNEIDER NATIONAL LEASING, INC., and SCHNEIDER NATIONAL INC., <br><br> Plaintiffs, <br> vs. <br><br> RAPTOR AUTO TRANSPORT, INC. <br><br> Defendant. | CASE NO. 1:23-cv-00469 <br><br> JUDGE BRIDGET MEEHAN BRENNAN <br><br> **MEMORANDUM OPINION AND ORDER** |

Before the Court is Defendant Raptor Auto Transports, Inc.'s ("Raptor") motion to dismiss Count Five of Plaintiffs' (collectively "Schneider") Complaint alleging the use of counterfeit marks in violation of the Lanham Act, 15 U.S.C. § 1114, *et al.* (Doc. No. 18.) Schneider responded in opposition (Doc. No. 21), and Raptor replied (Doc. No. 22). For the following reasons, the motion is GRANTED.

### I.     Facts Alleged

Schneider offers licensed motor carrier and transportation broker services across the United States. (Doc. No. 1 at PageID 3, ¶¶ 7-8.) Its trademarks and patents are registered with the United States Patent and Trademark Office. (*Id.* at PageID 5, ¶ 18.) Schneider transports goods directly as a motor carrier through a network of employed drivers or independent contractors. (*Id.* at PageID 3, ¶ 8.) To serve brokerage customers, Schneider also engages with third-party licensed carriers. (*Id.* at PageID 3, ¶ 11.) Typically, the third-party licensed carrier used its equipment unless Schneider expressly authorized it to use Schneider trailers for

transportation. (*Id*.)

Defendant Raptor is a licensed motor carrier that operated almost exclusively as a broker rather than a direct carrier. (*Id*. at PageID 4, ¶ 12.) Schneider previously engaged Raptor but ended those dealings in or around July 2021. (*Id*. at PageID 4, ¶ 13.)

Raptor is alleged to have used repeatedly, and without authorization, Schneider trailers to service Raptor's clientele from 2021 to the present. (*Id*. at PageID 8-9, ¶¶ 26-31.) In particular, Schneider alleges that Raptor began utilizing their empty trailers, bearing Schneider trademarks, to transport freight unrelated to any Schneider engagement or Schneider clients. (*Id*. at PageID 8, ¶ 26.) To prevent further use of the trailers by Raptor, Schneider sent three cease and desist letters dated on or about July 5, 2021, June 14, 2022, and October 28, 2022. (*Id*. at PageID 9, ¶¶ 28-30.) Yet, it is alleged that Raptor continued to take and use Schneider equipment without permission. (*Id*. at PageID 9, ¶ 31.)

## II. Discussion

### A. Standard of Review

When addressing a motion to dismiss brought under Rule 12(b)(6) of the Federal Rules of Civil Procedure, the Court must construe the complaint in the light most favorable to the plaintiff and accept all well-pleaded material allegations in the complaint as true. *United States ex rel. Ibanez v. Bristol-Myers Squibb Co.*, 874 F.3d 905, 914 (6th Cir. 2017) (setting forth the standard of review for a motion to dismiss); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The sufficiency of the complaint is tested against the notice pleading requirement that a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief[.]" Fed. R. Civ. P. 8(a)(2). Although this standard is a liberal one, a complaint must still provide the defendant with "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Thus, "[t]o survive a motion

to dismiss, a complaint must contain sufficient factual matter, accepted as true," to state a plausible claim. *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570).

The concept of facial plausibility "does not impose a probability requirement at the pleading stage; it simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence [of liability]." *Twombly*, 550 U.S. at 556. However, "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – 'that the pleader is entitled to relief.'" *Iqbal*, 556 U.S. at 679 (quoting Fed. R. Civ. P. 8(a)(2)). As such, the court will not permit "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements . . ." *Id.* at 778 (citations omitted).

If a plaintiff pleads facts that reveal a flaw in the claim or substantiate a defense, it may plead itself out of federal court. In other words, "sometimes the allegations in the complaint affirmatively show that the claim is [deficient or disallowed as a matter of law]. When that is the case, as it is here, dismissing the claim under Rule 12(b)(6) is appropriate." *Cataldo v. U.S. Steel Corp.*, 676 F.3d 542, 547 (6th Cir. 2012); *see also Riverview Health Inst. LLC v. Med. Mut. of Ohio*, 601 F.3d 505, 512 (6th Cir. 2010); *O'Gorman v. City of Chicago*, 777 F.3d 885, 889 (7th Cir. 2015) ("A complainant can plead himself out of court by including factual allegations that establish that the plaintiff is not entitled to relief as a matter of law.").

When a court is presented with a Rule 12(b)(6) motion, it may only consider material related to the pleadings. *Bassett v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008). Documents are considered related to the pleadings if they are attached to either the complaint or the defendant's motion to dismiss, referred to in the complaint, and central to the plaintiff's claims. *Id.* A court has complete discretion to determine "whether or not to accept

any material beyond the pleadings that is offered in conjunction with a Rule 12(b)(6) motion." *Barrett v. Harrington*, 130 F.3d 246, 253 (6th Cir. 1997) (citation omitted).

### B. Counterfeiting Under the Lanham Act

The Lanham Act describes a "counterfeit" as "a spurious mark which is identical with, or substantially indistinguishable from, a registered mark." 15 U.S.C. § 1127. "Counterfeiting, under 15 U.S.C. § 1114, is a subset of infringement." *Zinganything, LLC v. Imp. Store*, 158 F. Supp. 3d 668, 673 (N.D. Ohio 2016).

> Counterfeiting is the act of producing or selling a product with a sham trademark that is an intentional and calculated reproduction of the genuine trademark. A mark will only be considered counterfeit when it is identical with, or substantially indistinguishable from, a registered mark.

*Schneider Saddlery Co. v. Best Shot Pet Prod. Int'l, LLC*, No. 1:06-cv-02602, 2009 WL 864072, at *4 (N.D. Ohio Mar. 31, 2009) (quotations and citations omitted).

The Act "carves out 'counterfeit' as a more egregious type of infringement or 'colorable imitation.'" 4 McCarthy on Trademarks and Unfair Competition § 25:15.50 (5th ed.) (hereafter "McCarthy"). If a mark is deemed counterfeit, that changes the complexion of the remaining issues to be proved. "If an accused use is found to be a 'counterfeit,' this means it automatically satisfies the confusing similarity test of traditional infringement analysis. If the accused use is so closely similar as to be a 'counterfeit,' then traditional likelihood of confusion analysis is not necessary." *Id.* Use of a counterfeit mark also widens the range of potential remedies. *See, e.g.*, 15 U.S.C. §§ 1116(d), 1117(c).

While all counterfeit marks inherently infringe, not all trademark infringements qualify as counterfeit uses.

> Even if a mark is infringing, that mark is not necessarily counterfeit, because, while counterfeiting is a subset of trademark infringement and all counterfeits infringe . . . not all infringements are counterfeit. Infringement, therefore, is merely one prerequisite to a finding of a counterfeit mark. Counterfeiting is the act of

> producing or selling a product with a sham trademark that is an intentional and calculated reproduction of the genuine trademark.  A mark will only be considered counterfeit when it is identical with, or substantially indistinguishable from, a registered mark.

*Schneider Saddlery*, 2009 WL 864072, at *4 (quotations and citations omitted); *accord* McCarthy § 25:10 ("Counterfeiting is the act of producing or selling a product with a sham trademark that is an intentional and calculated reproduction of the genuine trademark.  A 'counterfeit mark' is a false mark that is identical with, or substantially indistinguishable from, the genuine mark.")

The reason why the Act treats a counterfeit more harshly than other infringements is a presumption that the reason why a reproduction was made so similar to the trademarked product was to trick consumers into believing that they were purchasing the genuine article.  *Gucci Am., Inc. v. Guess?, Inc.*, 868 F. Supp. 2d 207, 242 (S.D.N.Y. 2012).

> The practice occurs where an unauthorized representation of a legally registered trademark is carried on goods which are similar to the product for which the trademark is registered.  The object of the counterfeiter is to deceive the purchaser into believing that he or she is buying a legitimately branded product.  Commercial counterfeiting may thus involve patent and copyright infringements and passing off, as well as infringements of registered trademarks.

McCarthy § 25:10 (quoting The World Intellectual Property Organization, *Background Reading Material on Intellectual Property* 176 (1988)).  Accordingly, courts treat as counterfeits those "products that are stitch-for-stitch copies of those of another brand."  *Gucci*, 868 F. Supp. 2d at 242.

### C.  Application to the Facts Alleged or Admitted

Schneider did not allege that Raptor manufactured a trailer or affixed a Schneider mark to some other trailer.  Instead, Schneider alleged that Raptor stole trailers out of commercial lots and drove those around as part of Raptor's business.  According to Schneider:

> Raptor drivers routinely use empty Schneider trailers to haul loads for customers without Schneider's authorization. Schneider has located these trailers abandoned hundreds of miles from their original destinations or, in some instances, being used as storage facilities by Raptor customers. Schneider has collected eyewitness accounts of Raptor drivers attempting to hook Schneider trailers to their tractors and photographs of Raptor vehicles engaging in this conduct.

(Doc. No. 1-3 at PageID 27.) Schneider wrote to Raptor indicating that the latter's unauthorized use of its trailers was "actionable theft" and would be met in the future with the filing of criminal charges and civil lawsuits. (*See* Doc. No. 1-2.) Counts I and II of the Complaint alleged conversion and trespass to chattels.

Schneider's Lanham Act theory is simply this: stealing a product with specific marks amounts to counterfeiting whatever trademarks appeared on the stolen product. But Schneider has not marshaled legal authority for the proposition that using stolen merchandise is equivalent to counterfeiting marks that appear on the merchandise. And even if that legal proposition was presumed correct for the sake of argument, Schneider made admissions in response to the motion that brought this case within the ambit of controlling Sixth Circuit precedent. *See U.S. Structures, Inc. v. J.P. Structures, Inc.*, 130 F.3d 1185, 1192 (6th Cir. 1997).

Attached to Raptor's motion was a January 8, 2021, Master Transportation Agreement between it and Schneider (the "MTA"). (Doc. No. 18-2.) That contract referenced permissible uses by Raptor of Schneider equipment (trailers, containers, chassis, etc.). (*See id.* at PageID 150, § 15.1 & PageID 153-55, §§ 21, 24-27.).) In response to the motion, Schneider admitted that this contract is authentic and binding:

> Under the MTA, Schneider engaged Raptor as an independent contractor to provide transportation services to Schneider's brokerage customers whenever Schneider tenders customer shipments for Raptor to transport. *See* Doc. 18-2 at §§ 2, 18. As an independent contractor, Raptor agreed to "be wholly responsible for performing the contemplated transportation and for all costs and expenses of such transportation, including, without limitation, costs and expenses of all Carrier's transportation Equipment[.]" *Id*. at § 2.

> Section 21 of the MTA allows Schneider to permit Raptor "from time to time" to use Schneider's trailers and related equipment for transporting specific shipments tendered by Schneider.  * * *
>
> About six months after entering into the MTA, Schneider deactivated Raptor as an approved motor carrier under the MTA and stopped engaging Raptor to provide freight transportation services for Schneider's customers.  Compl., ¶ 13.  Since approximately July 2021, Schneider has not approved or permitted Raptor to use any of its trailers for any purpose.  *See id.*

(Doc. No. 21 at PageID 204-05.)

Schneider's Complaint expressly alleged that it previously engaged Raptor to provide services but that Schneider deactivated Raptor as an approved carrier in July 2021.  As Schneider admitted in the excerpt above from its brief, the MTA was the contract referenced in Paragraph 13 of the Complaint.

From the parties' briefing, the MTA appears to be central to this case, and the Court may properly consider it here.  *See Bassett*, 528 F.3d at 430.  Schneider reasoned, in part, that when it terminated Raptor's services under the MTA, at that point, Raptor was no longer authorized to use Schneider trailers and equipment.  (*See* Doc. No. 21 at PageID 205.)

The Sixth Circuit has previously held:

> We agree with defendants that § 1117(b) does not apply where, as in this case, a holdover franchisee continues to use the franchisor's original trademark after the franchise has been terminated.  Although the use of an original trademark is without authorization, it is not the use of a counterfeit mark.

*U.S. Structures*, 130 F.3d at 1192.  Schneider is correct that this case is not *exactly* like *U.S. Structures* inasmuch as Raptor was not a franchisee.  Moreover, the status of the parties' business relationship following July 2021 is different from the holdover franchisee scenario referenced in *U.S. Structures*.  (*See* Doc. No. 21 at PageID 209-10.)

Nonetheless, the legal reasoning and holding of *U.S. Structures* provide strong guidance.  The point made in *U.S. Structures* parallels this Court's interpretation and understanding of the

proscribed use of counterfeit marks under the Lanham Act. This Court is not persuaded by Schneider's argument that Raptor's alleged theft, conversion, or unauthorized use of Schneider-marked trailers is equivalent to an allegation that Raptor intentionally and with calculation reproduced a genuine trademark. *See Schneider Saddlery*, 2009 WL 864072, at *4.

The only difference between Raptor's use of Schneider trailers in the first and second half of 2021 would have been the contractual basis and putative authorization under the MTA, which governed during the first half of that year. To consumers, Raptor personnel hauling goods in a Schneider trailer would appear the same in early and late 2021. The same trailers and same Schneider marks would have appeared just the same to the outside public. The difference, then, was not between genuine and fake versions of Schneider trailers or Schneider trademarks. Rather, the difference was between Raptor having permission to use that equipment or not. Raptor may have had permission to use the equipment in the past. But once the MTA was terminated or deactivated, Schneider contends Raptor never thereafter had any such permission. This change in the contractual relationship is like the end of the franchise relationship in *U.S. Structures*.

Schneider did not allege any different way Raptor used the equipment or Schneider's marks. Schneider also did not allege that Raptor solicited a customer with the promise that Raptor would ship the customer's goods using Schneider equipment. Rather, Schneider's Complaint and opposition brief both indicate that once Raptor had been hired by third parties to haul goods, Raptor repeatedly stole and used empty Schneider trailers from commercial lots. If Schneider proves the facts as alleged, it may have tort remedies. But the nature of this sort of alleged wrong simply is not counterfeiting.

### III. Conclusion

For the reasons stated above, Defendant's motion to dismiss Count Five is GRANTED.

**IT IS SO ORDERED.**

                                                                 BRIDGET MEEHAN BRENNAN

**Date**: July 21, 2023                             UNITED STATES DISTRICT JUDGE